**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CIVIL ACTION**
**NO. 06-171-S**

**ALLISON MARIE DUNBAR GUILLORY,**
**Administratrix of the Estate**
**of Patrick Guillory, and**
**as Parent and Next Friend of**
**WINTER LAPATRIA GUILLORY and**
**ARIEL JU'NEA KEON GUILLORY,**
**Plaintiff,**

**VS.**

**REASON GUKUTU and**
**CHRISTIAN PERSONNEL, INC.**
**d/b/a CHRISTIAN CONSTRUCTION, INC.,**
**Defendants.**

**DEFENDANTS, REASON GUKUTU AND CHRISTIAN PERSONNEL, INC. d/b/a CHRISTIAN CONSTRUCTION, INC.'S, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Now come the defendants, Reason Gukutu and Christian Personnel, Inc. d/b/a Christian Construction, Inc., in the above-entitled action, by and through their undersigned attorneys, Clinton & Muzyka, P.C., and submit their Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. STATEMENT OF THE CASE

Plaintiff, Allison Marie Dunbar Guillory, Administratrix of the Estate of Patrick Guillory and as

Parent and Next Friend Winter Lapatria Guillory and Ariel Ju'Nea Keon Guillory, commenced suit against the defendants to recover for the wrongful death of plaintiff's ex-husband, Patrick Guillory, as a result of an incident at Southeastern New England Shipbuilding Corporation (hereinafter referred to as "Senesco") in North Kingstown, Rhode Island. Plaintiff maintains that Patrick Guillory died as a result of the negligence of Reason Gukutu and/or Christian Personnel, Inc. d/b/a Christian Construction, Inc. At the time of the incident on June 15, 2005, both Patrick Guillory and Reason Gukutu were employed in the manufacture of a barge at Senesco, 10 MacNaught Street, North Kingstown, Rhode Island.

Plaintiff was the ex-wife of Patrick Guillory and brings this action on behalf of her two (2) children Winter Lapatria Guillory and Ariel JuoNea Keon Guillory. Plaintiff maintains Winter Lapatria Guillory and Ariel JuoNea Keon Guillory were the children of Patrick Guillory.

## II. STATEMENT OF UNCONTESTED FACTS

1. On June 15, 2005, Patrick Guillory was employed at Senesco, located at 10 NacNaught Street, North Kingstown, Rhode Island. *See Plaintiff's Answer to*

*Defendants Interrogatory No. 3.* He was employed as a laborer. *See Employer's First Report of Injury at box 19.*

2. On June 15, 2005, Reason Gukutu was an employee of Christian Construction, Inc. (hereafter after referred to as "Christian").[1] *See Plaintiff's Third Amended Complaint at Count III Paragraph 2.* Christian is an Alabama corporation with a principal place of business at 858 Butler Drive, Suite B, Mobile, Alabama. *See Deposition of Donald Jerome Christian at pages 3-5.*

3. Defendant, Reason Gukutu, is a resident of Springfield, Massachusetts. *See Deposition of Reason Gukutu at page 3.* He was born in Harare, Zimbabwe and has a welding and shipbuilding background. *Deposition of Gukutu at 11-16.* In May or June of 2000, he immigrated to the United States and obtained employment at Avondale Shipyard in New Orleans, Louisiana. *Deposition of Gukutu at 12-13.*

4. In September, 2003, Reason Gukutu obtained employment at Christian. *Deposition of Gukutu at 16.* At the time, he was working at Bohlinger Marine in Louisiana and wanted to change to another state because of the heat in the summertime. He saw an advertisement in the

---

1 Discovery has indicated that the contract with Senesco was actually with CC, Inc. For purposes of this Motion, the distinction in corporate name is irrelevant. The parties have agreed to a Motion to Amend the Complaint to correct the corporate name of the corporate Defendant.

newspaper for Christian and contacted the company. *Deposition of Gukutu at 17.* He was advised of potential work in Rhode Island.

5. Christian is in the business of obtaining skilled employees for marine employers. *Deposition of Christian at 10-11.* In 2005, Christian had a contract with Senesco. *Deposition of Christian at pages 53* Sensco pays Christian an hourly rate for each employee. Christian, in turn, pays the employee and provides workman's compensation coverage. *Deposition of Christian at 14-15.*

6. The direction and control of the work of Reason Gukutu at Senesco was directed by Senesco. Reason Gukutu took all his work orders on how to perform his assignments from his supervisor at Senesco. *Deposition of Christian at 90-91; Deposition of Michael Scannell at 83-86; 55 Deposition of Earl Barden at 39-40; Deposition of David Jacques Millette at 104-107.*

7. Christian will provide safety training, if requested by the employer. Senesco did not request such training and, in fact, would perform its own training of the employees. *Deposition of Christian at 37. Deposition of Scannell at 12-13;37-38; 76-77.*

8. Reason Gukutu began working at Senesco as a shipbuilder/shipfitter. *Deposition of Gukutu at 32.* He was subsequently promoted to foreman and is still employed at Senesco. *Deposition of Gukutu at 36.*

9. When Reason Gukutu first reported to Senesco, he received a safety orientation. *Deposition of Gukutu at 41.* He also received man lift training on two (2) occasions, overhead crane operation training, fork truck training, and fire watch training by Senesco. *Deposition of Gukutu at 42.*

10. The training for the man lift was conducted by Michael Scannell, an employee of Senesco. This consisted of classroom instruction for approximately two (2) hours, practical training and an examination. Mr. Gukutu passed and was issued a license to operate a man lift. *Deposition of Scannell at 12-14.*

11. Reason Gukutu and Patrick Guillory had been working together as a team for approximately one (1) month prior to the incident on June 15, 2005. *Deposition of Gukutu at 55-57.* They were engaged in the construction of a barge at Senesco. *Deposition of Barden at 15.* This involved Mr. Guillory and Mr. Gukutu tack welding the brackets and determining the alignment. They had been

doing this procedure for at least five (5) days. *Deposition of Gukutu at 57-58.*

12. On June 15, 2005, Mr. Gukutu and Mr. Guillory were fitting transverse frames. Mr. Gukutu's supervisor, Jack Mullen, wished to inspect the work. *Deposition of Gukutu at 58-59.* Mr. Gukutu and Mr. Mullen inspected the work by use of a man lift. Once the work was approved, Mr. Mullen departed and Mr. Gukutu and Mr. Guillory resumed work. *Deposition of Gukutu at 60.*

13. Mr. Gukutu positioned the man lift basket approximately 12 – 15 feet high and wished to inspect the alignment of the transverse frame. As he was inspecting the alignment, his hands were off the controls, but he detected the man lift moving. It is believed by Mr. Gukutu that Mr. Guillory was moving the basket. *Deposition of Gukutu at 61-62.* The movement of the basket resulted in the frame pinning Mr. Guillory between it and the man lift controls.

14. As a result, Mr. Guillory died from his injury. *Plaintiff's Third Amended Complaint at Count I paragraph 5.*

15. Subsequent to the incident, Senesco filed forms with the state workman's compensation commission and for longshore and harbor worker's compensation. *See*

*Memorandum of Agreement for the State of Rhode Island Worker's Compensation.* The plaintiff received compensation under the state workman's compensation act. *Deposition of Allison Marie Dunbar Guillory at pages 35-36; Plaintiff's Answer to Interrogatory No. 5.*

16. At the time of the incident, Reason Gukutu was performing the work of Senesco, all of the work assignments were received from a Senesco employee, there was an understanding between Cristian and Senesco that Reason Gukutu would be performing the work of Senesco, Reason Gukutu acquiesced in the work situation, the tools and place for performance were furnished by Senesco, *deposition of Millette at 107; Deposition of Christian at 44-45;* and Mr. Gukutu had been working at Senesco under that arrangement for a considerable length of time.

17. Senesco is located on water on McNaught Street in Quonset Point. *Deposition of Scannell at pages 66-70 and Exhibit D to the deposition.*

**III. STANDARD OF REVIEW**

The party seeking Summary Judgment "bears the initial responsibility of informing the court of the basis for its motion in identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. vs. Catrett, 477 U.S. 317, 323 (1986)*. Any inferences must be drawn in the light most favorable to the party opposing the motion. *T.W. Electric Services, Inc. vs. Pacific Elec. Contractors Association, 809 F.2nd 626, 631 (9th Cir. 1987).*

Once the moving party has satisfied this initial burden, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson vs. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)* quoting Rule 56(e) of the Federal Rules of Civil Procedure.

> If the party moving for Summary Judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, then the non-moving party may not rely on the mere allegations in the pleadings in order to preclude Summary Judgment.

*T. W. Electric Services, Inc. vs. Pacific Elec. Contractors, Association, Supra. at 630.* It is incumbent on the non-moving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. vs. Catrett, Supra. at 323*.

The mere disagreement on the bald assertion that a genuine issue of material fact exists “is insufficient to preclude an otherwise valid Motion for Summary Judgment.” *Harper vs. Wallingford, 877 F.2nd 728, 731 (9th Cir. 1989).* There is no issue for a trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson vs. Liberty Lobby, Inc., Supra. at 249*.

The facts in this particular action can lead to only one conclusion: That Reason Gukutu was a borrowed servant of Senesco under the Longshore and Harbor Worker’s Compensation Act, (LHWCA) and the defendants are therefore immune from liability under 33 U.S.C. §905(a) of the Longshore and Harbor Worker’s Compensation Act.

**IV. ISSUES**

A. Are the defendants immune from liability under the Rhode Island Workman’s Compensation Act?

B. Does the Longshore and Harbor Worker’s Compensation Act apply to the facts in the instant case?

C. Is there a direct conflict between the federally enacted Longshore and Harbor Worker’s Compensation Act and the Rhode Island Worker’s Compensation Act?

D. Is Defendant, Reason Gukutu, a borrowed servant under the Longshore and Harbor Worker's Compensation Act?

E. Even if the Longshore and Harbor Worker's Compensation Act does not apply, are there any facts to support a finding that Defendant, Christian Personnel, Inc., d/b/a Christian Construction, Inc. was negligent for failing to train Reason Gukutu and/or negligent hiring of Reason Gukutu?

## V. ARGUMENT

A. Is the defendant immune from liability under the Rhode Island Workman's Compensation Act?

Susequent to the incident, plaintiff entered into a Memorandum of Agreement for the payment of Rhode Island workman's compensation benefits. Under R.I.G.L. §28-29-20, an injured employee's worker's compensation benefits are the exclusive remedy "in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer. . . or employees." In the case of *Agostini vs. W.J. Halloran Co., 82 R.I. 466 (1955),* the Rhode Island Supreme Court noted that "the right of control of a borrowed employee

is determinative of the question whether he is the servant of a lending employer or of the borrowing employer." *Id. at 470*. The Supreme Court went on to hold:

> Whether the loaned servant is to continue in the general employment of the lending master is ordinarily a question of fact, the determination of which may be aided by the consideration of several factors. From the absence of evidence to the contrary, there is an inference that such general employment continues so long as the service rendered by the servant of the business entrusted to him by his general employer.

*Id. at 471*. The Rhode Island Supreme Court clarified the borrowed servant doctrine in *Mainella vs. Staff Builders Industrial Services, Inc., 608 A.2nd 1141 (R.I. 1992).*

The court therein noted, in a suit brought against a placement agency:

> . . . The borrowed-servant rule, however, severs the liability of an employer when the servant is lent to another employer or master. The second master, who exercises complete control over the servant, is liable for injuries to a person or property of third person resulting from the acts of his or her employee, which are incidental to actions that an employer is hired to perform and are within the scope of employment. As long as the borrowing employer retains full control over the lent employee, the borrowing employer assumes liability for the employee's conduct, even though the original lending employer pays the employee's salary. . . In contrast, when an employer is negligent in hiring or retaining an employee who is incompetent or unfit, such negligence typically consists of either hiring, supervising, or retaining an employee with the

> knowledge of his unfitness or for failing to use reasonable care to discover the unfitness.

*Id. at 1144*. It was based upon this decision that the plaintiff filed the Third Amended Complaint to allege the negligent hiring causes of action in Counts V and VI.

Thus, even if this Honorable Court accepts the borrowed-servant doctrine and awards Summary Judgment to Defendant, Reason Gukutu, under the *Mainella* decision Defendant Christian is not immune from liability for Counts V and VI of the Third Amended Complaint.

B. Does the Longshore and Harbor Worker's Compensation Act apply to the facts in the instant case?

Defendants maintain that both Patrick Guillory and Reason Gukutu were engaged in employment under the Longshoreman and Harbor Worker's Compensation Act (hereinafter referred to as "LHWCA"). It is well settled that in order for the LHWCA to apply, the employee must meet both the geographical situs and occupational status test imposed by the 1972 amendments to the act. *Chesapeake & Ohio Ry. Co. vs. Schwarb, 493 U.S. 40 (1989)*. The Supreme Court has stated that the LHWCA should be liberally construed in favor of coverage. *Bank vs. Chicago Grain Trimmers Ass'n, 390 U.S. 459 (1968)*.

The LHWCA addresses the situs aspect of coverage in Section 903. According to that section, the LHWCA applies to any injuries occurring "upon the navigable waters of the United States, including any adjoining pier, wharf, drydock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." Longshore and Harbor Worker's Compensation Act, 33 U.S.C. §903 (underscoring added).

The LHWCA addresses the status aspect of coverage in Section 902(3). According to that section, the LHWCA applies to any employee who is engaged in marine employment. Marine employment is defined as including certain occupations: longshoreman, persons engaged in longshoring operations, harbor worker's, such as ship repairman, ship builders and ship breakers. 33 U.S.C. §902(3) (underscoring added).

Here, it is clear that the LHWCA applies. The status aspect of coverage is clearly satisfied. Both Patrick Guillory and Reason Gukutu were engaged in ship building. *Dravo Corp. vs. Maxin, 545 F.2nd 374, Cert. Denied 433 U.S. 908 (1976); DiLorenzo vs. Robert E. Lee, Inc., 412 F.Supp. 1012(E.D.L.a. 1976)*. Further, the situs aspect is satisfied. The building in which the barge construction

was being performed was at the Senesco facility at an adjoining area used for building a vessel in Quonset, Rhode Island. See *Cunningham v. Director, OWC, 377 F.3rd 98 (1st Cir. 2004),* which assumed application of the functional relationship test in deciding that a manufacturer 3.5 to 4 miles from Bath Iron Works was not an “adjoining area” but clearly indicated that an area that does adjoin a navigable waterway would be within the 1972 amendments to the LHWCA.

C. Is there a direct conflict between the federally enacted Longshore and Harbor Worker’s Compensation Act and the Rhode Island Worker’s Compensation Act?

The defendants maintain that there is a direct conflict between the Rhode Island Worker’s Compensation Act and the Longshore and Harborworker’s Compensation Act. As previously indicated, the Rhode Island Worker’s Compensation Act recognizes the borrowed servant doctrine, but only shields the defendants from liability based upon respondeat superior. *See Mainella vs. Staff Builders Industrial Services, Inc., 608 A.2nd 1141 (R.I. 1992).*

That is not the situation with respect to the LHWCA. Section 905(a) and 933(i) of the LHWCA, 33 U.S.C. §§ 905 and 933, provide that the receipt of compensation benefits

shall be the exclusive remedy. *In Gaudet v. Exxon Corporation, 562 F.2nd 351 (5th Cir. 1977),* an injured worker of Tidelands Marine Services, Inc. brought a negligence action against Exxon as a result of a knee injury. *Id.at 354.* After the trial court granted Summary Judgment on the basis of the borrowed servant doctrine, the Fifth Circuit affirmed, noting that the question of the applicability of the borrowed servant doctrine is an issue of law. *Id.at 358. See also, Robinson v. Apache Corporation, 2006 WL 622917 (E.D. La. 2006).* In deciding the matter, the Fifth Circuit noted that "…in this context, the doctrine bears little resemblance to …respondeat superior…In the instant case, however, instead of being a device to impute liability, the borrowed employee doctrine is a means to escape it through the **exclusive remedy provisions** of the LHWCA" *Id.at 356 (bolding added for emphasis).* In *Robinson,* the court therein noted "Under the 'borrowed employee' doctrine, the tort immunity provided to employers by the LHWCA has been afforded to 'borrowing' employers", citing to *Total Marine Serv. Inc. v. Director, Office of Workers' Compensation Programs, 87 F.3rd 774, 777 (5th Cir. 1996) and Melancon v. Amoco Prod.Co., 834 F.2nd 1238, 1243-44 (5th Cir. 1988).*

This is not a case where the Rhode Island Worker's Compensation scheme has concurrent jurisdiction over the Plaintiff's tort claims. See, *Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715 (1980).* In that case, the Supreme Court addressed the issue of whether Section 903 of the LHWCA displaced states from applying their own worker's compensation schemes to land based injuries.

In reaching its conclusion, the Supreme Court stated that there is no inconsistency between the application of state worker's compensation remedies and the federal compensation scheme as embodied in the LHWCA. The court concluded that a longshoreman who is injured on land may collect compensation benefits concurrently or successively under the LHWCA and state worker's compensation laws. This area of concurrent jurisdiction is often referred to as the "twilight zone."

In the case at bar though, Plaintiff does not claim an award of compensation benefits but instead pursues a state law tort action for negligence against the defendants. This raises the issue of whether Section 905(a) of the LHWCA preempts the liability of the employer for its direct negligence under *Mainella* and applies full exclusivity for all tort claims against the Defendants. The Third Circuit specifically addressed these issues

under very similar circumstances in *Peter v. Hess Oil Virgin Islands Corp., 903 F.2nd 935 (3rd Cir. 1990).*

In that case, the plaintiff suffered substantial exposure to jet fuel while working on land at one of the defendant's facilities. At the time of the incident, the plaintiff was employed by Litwin Panamerican Corporation but was working for the defendant in the Virgin Islands as a temporary employee. *Id.at 937-38.* The plaintiff brought a common law negligence action against the defendant. The defendant therein argued that it was immune from liability pursuant to Section 905(a) of the LHWCA, which states:

> *The liability of an employer…shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.*

In that case, the applicable state compensation act legislatively rejected the borrowed servant doctrine. *Id.at 939.* The jury returned a verdict in favor of the plaintiff and the defendant appealed.

In reversing the lower court's ruling, the Third Circuit determined that the plaintiff was a borrowed servant of the defendant at the time of the incident

pursuant to the LHWCA. The court further stated that there was a question of federal preemption because there was a direct conflict between Section 905(a) of the LHWCA and the state compensation law. Specifically, the defendant was not immune from tort liability under the applicable state compensation law because it did not recognize the borrowed servant doctrine. Conversely, the defendant was immune from tort liability under the LHWCA because it recognized the borrowed servant doctrine.

In deciding whether the defendant is immune from liability, the Third Circuit considered (1) whether the LHWCA evidences a congressional intent to preempt the entire area of compensation for that kind of injury, or (2) is the LHWCA inconsistent with the provisions of a state tort remedy so that it would be impossible for the defendant to comply with both federal and state law or (3) whether the state tort remedy stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. *Id.at 942.*

In light of *Sun Ship, Inc.,* the court held that the LHWCA was not intended to preempt state legislation effecting events occurring within the twilight zone. Additionally, the court determined that it was not impossible for the defendant to comply with both the LHWCA

and the state compensation law relied upon by the plaintiff. The court, however, did conclude that the application of the state compensation law frustrated the "full purpose and objectives of Congress" as reflected in the LHWCA. *Id.at 952.*

Accordingly, the court held that the state compensation law was preempted by Section 905(a) of the LHWCA and that the borrowed servant doctrine applied to the facts in the case. *Id.at 950-51.* Based on the plain language of Section 905(a) of the LHWCA, Congress unmistakably intended that compensation, and not tort damages, were to be the primary source of relief for workplace injuries for longshoremen against their employers. *Id.at 952.*

Other courts, including the Fifth, Ninth and Second Circuits, have reached the same conclusions. *See, Fontenot v. AWI, Inc., 923 F.2d 1127, 1132 (5th Cir. 1991); Saipan Stevedore Co. Inc. v. Director, Office of Workers' Compensation Programs, 133 F.3d 717, 725 (9th Cir. 1998); American Stevedoring Ltd. v. Marinelli, 248 F.3d 54, 64 (2nd Cir. 2001); and Cobb v. SIPCO Services & Marine, Inc., 1997 A.M.C. 1964 (E.D.La. 1997); Hill v. Knapp, 914 A.2d 1193, 1196, 396 Md. 700, 700 (Md. 2007).*

In the case sub judice, there is a direct conflict between *Mainelli* and Section 905(a) of the LHWCA. The common law remedy under *Mainelli* only provides immunity for liability based upon respondeat superior and does not provide immunity for any direct negligence, as for example negligent hiring. Whereas, Section 905(a) of the LHWCA provides that the exclusive remedy of the Plaintiff is the recovery of LHWCA benefits. In view of the foregoing, Section 905(a) preempts the relevant common law remedy and the borrowed servant doctrine as it applies under the LHWCA applies to the instant case.

D. Is Defendant, Reason Gukutu, a borrowed servant under the Longshore and Harbor Worker's Compensation Act?

As previously indicated, the LHWC is the controlling law in this case. This is true despite the fact that Plaintiff received her benefits under the Rhode Island Worker's Compensation Act. As such, the next determination is whether the Defendant Reason Gukutu was a borrowed servant and therefore an employee of SENESCO at the time of the incident.

According to Section 905(b) of the LHWCA, an entity is considered an "employer" and is immune from tort

liability as long as it secures payment of compensation for the injured worker. Here, it is uncontested that SENESCO procured both state and federal worker's compensation coverage for Patrick Guillory. This is sufficient to shield Defendants. See, *Melancon v. Amoco Production Co., 834 F.2nd 1238 (5th Cir. 1988)*(no requirement that tort immunity attaches only to an employer who actually pays premiums for worker's compensation) and *Peter v. Hess Oil Virgin Islands Corp., 903 F.2nd 935 (3rd Cir. 1990)*(borrowing employer immune from suit where compensation is secured through agreement with lending employer).

Defendants maintain that Reason Gukutu was a borrowed servant of SENESCO at the time of the incident, thereby making Defendant Gukutu and Defendant Christian immune from liability.

The majority of decisions on borrowed servant status are in the Fifth Circuit. There, generally to determine whether an individual is a borrowed servant, there is a nine (9) factor test:

> *1. Who has control over the employee and whose work he is performing, [beyond mere suggestion of details or cooperation];*
> *2. Whose work is being performed?;*
> *3. Was there an agreement, understanding or meeting of the*

*minds between the original and borrowing employer?;*

4. *Did the employee acquiesce in the new work situation?;*
5. *Did the original employer terminate his relationship with the employee?;*
6. *Who furnished tools and place for performance?;*
7. *Was the new employment over a considerable length of time?;*
8. *Who has the right to discharge the employee?; and*
9. *Who had the obligation to pay the employee?*

In *White v. Bethlehem Steel Corporation, 222 F.3rd 146 (4th Cir. 2000)*, the nine factor task was jettisoned and the Court therein indicated that ***"the authoritive direction and control inquiry will more efficiently resolve a plaintiff's borrowed servant status than a nine-factor balancing calculus."*** Id. 150. There is no definitive First Circuit controlling decision, but under either the nine factor test or the direction and control test, Defendant Gukutu should be found to be a *borrowed servant* and both he and Christian are immune from tort liability.

The evidence is clear that all direction and control of the work of Reason Gukutu was with SENESCO. He worked on the premises of SENESCO, under the direction of SENESCO supervisors. He had been doing this work for some time and had clearly acquiesced in the situation. The work

that was being performed was the work of SENESCO and it was being performed by the use of SENESCO tools. The manlift in which the incident occurred was leased by SENESCO and Christian had no input into its retention, use and inspection. *Deposition of Scannell at 26-27; Deposition of Christian at 45.* Further, Michael Scannell admitted that he did not even consider making any claim against Christian for the OSHA violation, because the direction and control of the work of Mr. Gukutu was by SENESCO. *Deposition of Scannell at 54-56.*

Even if the nine-factor test is utilized, defendant Gukutu is a borrowed servant. No one factor or combination of factors is determinative. *United States Fire Ins. Co. v. Miller, 381 F.3rd 385 (5th Cir. 2004); Lemaire v. Danos & Curole Marine Contractors, 266 F.3rd 1059 (5th Cir. 2001).* In *Gaudet,* the Fifth Circuit found that when the issue of whether one is borrowed employee arises in the context of the LHWCA, the focus should be on factors 4, 5, 6, and 7. *Gaudet, supra at 357.*

As to the first factor, Mr. Gukutu took all his orders from SENESCO supervisors. Both Michael Scannell and Earl Barden of SENESCO testified that only SENESCO controls the direction and control of the work being performed. This is consistent with the testimony of

Jerome Christian. Mr. Christian testified that Christian has no control over the work being performed. In analyzing this first factor, this Honorable Court must distinguish between “authoritative direction and control” and mere suggestion as to details. *Ruiz v. Shell Oil, 413 F.2nd 310, 313(5th Cir. 1969).* The authoritative direction and control was with SENESCO.

As to the second factor, there is no doubt that it is the work of SENESCO that was being performed. Defendant Gukutu and Patrick Guillory were engaged in the construction of a barge. In fact, just prior to the incident, the work had been inspected by one of SENESCO’s supervisors.

As to the third factor, the contract indicated that Christian would be providing skilled workers. In assessing this factor, this Honorable Court must consider, in addition to the contract terms, the reality of the worksite. *Melancon v. Amoco Prod. Co., 834 F.2nd 1238, 1245 (5th Cir. 1988)*

As to the fourth factor, clearly Defendant Gukutu acquiesced in the situation. This factor examines whether the employee was aware of his working conditions and chose to continue. *Brown v. Union Oil Co., 984 F.2nd 674, 678 (5th Cir. 1993).* He contacted Christian seeking

employment, came to Rhode Island and had been working at SENESCO for a number of years. In fact, he moved from the south to his current location outside Springfield, Massachusetts, having purchased a house for his wife and family. *Deposition of Gukutu at 4-5.*

The fifth factor does not require the lending employer to completely sever its relationship with the employee. Such requirement would effectively eliminate the borrowed servant doctrine. *Capps v. N.L.Bariod-NL Industries, 784 F.2nd 615, 617-18 (5th Cir. 1986).* Instead, when considering this factor the focus is on the lending employer's relationship while the borrowing occurs. *Id.* Here, Christian had no operational control over Defendant Gukutu while he was working. Any control that Christian had was "nominal at most", *Melancon, 834 F.2nd at 1246.*

The sixth factor examines who furnished the tools and place of the performance of the work. *Ruiz, 413 F.2nd at 312-13.* The work was done at SENESCO. The only tools provided by the worker were normal small tools as contained in a tool belt. Otherwise, all tools were provided by SENESCO.

The seventh factor examines the length of time of the employment. It is uncontested that Mr. Gukutu had worked for an extended period of time.

The eighth factor looks to the right to terminate. Jerome Christian testified that Christian, as any employer, had the right to terminate Mr. Gukutu. But this could only be done for actions that occurred off the worksite. At SENESCO, Christian would terminate only if requested by SENESCO. *Deposition of Christian at pages 62-66.* See, *Robinson v. Apache Corporation, 2006 WL 622917 (E.D. La. 2006)*

Lastly, the ninth factor examines who had the obligation to pay Mr. Gukutu. The evidence is clear that Defendant Gukutu was paid by Christian, based upon time information provided by the SENESCO payroll department. The time information reflected the amount of time that Defendant Gukutu worked for SENESCO. *Deposition of Christian at 38-39.* Thus, this supports borrowed servant status. *Brown, 984 F.2nd at 679; Melancon, 834 F.2nd at 1246; Capps, 784 F.2nd at 618; Billizon v. Conoco, 993 F.2nd 104; 105-6 (5th Cir. 1993).*

In weighing the factors set forth in *Ruiz v. Shell Oil Co., 413 F.2nd 310 (5th Cir. 1969),* the evidence unequivocally demonstrates that the plaintiff was a borrowed servant of SENESCO at the time of the incident. There is no genuine issue of material fact concerning the status of Defendant Gukutu at the time the incident

occurred. Accordingly, the Defendants are entitled to Summary Judgment in their favor because Plaintiff's exclusive remedy is the receipt of compensation benefits.

The test for borrowed servant in the First Circuit is not as stringent as the Fifth Circuit's test. Here, the test is basically whose work is being performed and who has control over the employee. *Raymond v. I/S Cariba, 626 F.2nd 203 (1st Cir. 1980).* As previously indicated, under this test Defendant Gukutu was a borrowed servant under the direction and control of SENESCO.

E. Even if the Longshore and Harbor Worker's Compensation Act does not apply, are there any facts to support a finding that Defendant, Christian Personnel, Inc., d/b/a Christian Construction, Inc. was negligent for failing to train Reason Gukutu and/or negligent hiring of Reason Gukutu?

Even if this Honorable Court rules that the Longshore and Harbor Worker's Compensation Act does not apply and that Defendant Christian can be held liable for its own negligence, there is no fact upon which liability can be found. Plaintiff maintains in her Third Amended Complaint that Christian is liable for the failure to train

Defendant Gukutu and/or was otherwise negligent in some fashion in hiring Defendant Gukutu. There are no facts upon which a reasonable jury could base such a finding.

Earl Barden testified that Defendant Gukutu was an excellent worker. *Deposition of Barden at 8; Deposition of Christian at 31-32.* Defendant Gukutu was duly trained as a pipefitter and shipfitter. After the incident, he continued to work at SENESCO and, in fact, was promoted to a lead man.

Michael Scannell, the individual at SENESCO responsible for performing the safety training, indicated that he did not care what safety training the workers alleged that they had previously received. It was SENESCO's policy to perform the safety training. Mr. Christian indicated that Defendant Christian would perform the safety training if requested by the client. In the case of SENESCO, they did not request the safety training, preferring to perform it in-house.

## VI. CONCLUSION

Based upon the above arguments, Defendants assert that the "realities of the worksite" were that all the direction and control of the work of Reason Gukutu were by Senesco and, as such, he is a borrowed servant immune from liability due to the payment of compensation benefits to

Plaintiff by Senesco. Further, Defendant Christian is immune from liability because Reason Gukutu was engaged in marine employment subject to the LHWCA which provides that Plaintiff's exclusive remedy is the receipt of compensation benefits. Alternatively, there are no facts upon which a jury could base liability of Defendant Christian for negligent hiring or negligent training.

**WHEREFORE**, the defendants pray this Honorable Court to allow its Motion for Summary Judgment.

Respectfully submitted,

By its attorney,

**CLINTON & MUZYKA, P.C.**

**"/S/Robert E. Collins"**
**Robert E. Collins**
**BBO NO: 2951**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165
(617) 720-3489 Fax

Dated: March 22, 2007