**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CIVIL ACTION**
**NO. 06-171-S**

**ALLISON MARIE DUNBAR GUILLORY,**
**Administratrix of the Estate**
**of Patrick Guillory, and**
**as Parent and Next Friend of**
**WINTER LAPATRIA GUILLORY and**
**ARIEL JU'NEA KEON GUILLORY,**
**Plaintiff,**

**VS.**

**REASON GUKUTU and**
**CHRISTIAN PERSONNEL, INC.**
**d/b/a CHRISTIAN CONSTRUCTION, INC.,**
**Defendants.**

**DEFENDANTS, REASON GUKUTU AND CHRISTIAN PERSONNEL, INC.**
**d/b/a CHRISTIAN CONSTRUCTION, INC.'S,**
**STATEMENT OF UNDISPUTED FACTS**

Now come the defendants, Reason Gukutu and Christian Personnel, Inc. d/b/a Christian Construction, Inc., in the above-entitled action, by and through their undersigned attorneys, Clinton & Muzyka, P.C., and submit their Statement of Undisputed Facts.

1. On June 15, 2005, Patrick Guillory was employed at Senesco, located at 10 NacNaught Street, North Kingstown, Rhode Island. *See Plaintiff's Answer to Defendants Interrogatory No. 3.* He was employed as a laborer. *See Employer's First Report of Injury at box 19.*

2. On June 15, 2005, Reason Gukutu was an employee of Christian Construction, Inc. (hereafter after referred to as "Christian").[1] *See Plaintiff's Third Amended Complaint at Count III Paragraph 2.* Christian is an Alabama corporation with a principal place of business at 858 Butler Drive, Suite B, Mobile, Alabama. *See Deposition of Donald Jerome Christian at pages 4 at line 12 and 5 at line 4.*

3. Defendant, Reason Gukutu, is a resident of Springfield, Massachusetts. *See Deposition of Reason Gukutu at page 3 at line 24.* He was born in Harare, Zimbabwe and has a welding and shipbuilding background. *Deposition of Gukutu at 11 line 3 and 13 line 18 to 16 line 18.* In May or June of 2000, he immigrated to the United States and obtained employment at Avondale Shipyard in New Orleans, Louisiana. *Deposition of Gukutu at 12 line 25.*

4. In September, 2003, Reason Gukutu obtained employment at Christian. *Deposition of Gukutu at 16 at line 21.* At the time, he was working at Bohlinger Marine in Louisiana and wanted to change to another state because of the heat in the summertime. He saw an advertisement in

1 Discovery has indicated that the contract with Senesco was actually with CC, Inc. For purposes of this Motion, the distinction in corporate name is irrelevant. The parties have agreed to a Motion to Amend the Complaint to correct the corporate name of the corporate Defendant.

the newspaper for Christian and contacted the company. *Deposition of Gukutu at 17 at lines 4-14.* He was advised of potential work in Rhode Island.

5. Christian is in the business of obtaining skilled employees for marine employers. *Deposition of Christian at 10 at line 22.* In 2005, Christian had a contract with Senesco. *Deposition of Christian at pages 53 line 7 and Exhibit 2 to that deposition.* Senesco pays Christian an hourly rate for each employee. Christian, in turn, pays the employee and provides workman's compensation coverage. *Deposition of Christian at 14 line 3 to 15 at line 8; 90 at line 24.*

6. The direction and control of the work of Reason Gukutu at Senesco was directed by Senesco. Reason Gukutu took all his work orders on how to perform his assignments from his supervisor at Senesco. *Deposition of Christian at 91 at lines 1-11. Deposition of Michael Scannell at 83 at line 15 to 85 at line 17; 55 at lines 3-20; Deposition of Earl Barden at 39 at line 20 to 40 at line 24; Deposition of David Jacques Millette at 104 at line 12 to 107 at line 18.*

7. Christian will provide safety training, if requested by the employer. Senesco did not request such training and, in fact, would perform its own training of

the employees. *Deposition of Christian at 37 at line 25. Deposition of Scannell at 12 at line 19 to 13 at line 18;37 at line 25 to 38 at line 7; 76 at line 15 to 77 at line 1.*

8. Reason Gukutu began working at Senesco as a shipbuilder/shipfitter. *Deposition of Gukutu at 32.* He was subsequently promoted to foreman and is still employed at Senesco. *Deposition of Gukutu at 36.*

9. When Reason Gukutu first reported to Senesco, he received a safety orientation. *Deposition of Gukutu at 41 at lines 4-13.* He also received man lift training on two (2) occasions, overhead crane operation training, fork truck training, and fire watch training by Senesco. *Deposition of Gukutu at 42 at lines 1-10.*

10. The training for the man lift was conducted by Michael Scannell, an employee of Senesco. This consisted of classroom instruction for approximately two (2) hours, practical training and an examination. Mr. Gukutu passed and was issued a license to operate a man lift. *Deposition of Scannell at 14 at line 3.*

11. Reason Gukutu and Patrick Guillory had been working together as a team for approximately one (1) month prior to the incident on June 15, 2005. *Deposition of Gukutu at 55 at lines 13 to 57 at line 15.* They were

engaged in the construction of a barge at Senesco. *Deposition of Barden at 15 at lines 8-11.* This involved Mr. Guillory and Mr. Gukutu tack welding the brackets and determining the alignment. They had been doing this procedure for at least five (5) days. *Deposition of Gukutu at 57 line 3 to 58 line 16.*

12. On June 15, 2005, Mr. Gukutu and Mr. Guillory were fitting transverse frames. Mr. Gukutu's supervisor, Jack Mullen, wished to inspect the work. *Deposition of Gukutu at 58 line 24 to 59 line 24.* Mr. Gukutu and Mr. Mullen inspected the work by use of a man lift. Once the work was approved, Mr. Mullen departed and Mr. Gukutu and Mr. Guillory resumed work. *Deposition of Gukutu at 60 at lines5-8.*

13. Mr. Gukutu positioned the man lift basket approximately 12 – 15 feet high and wished to inspect the alignment of the transverse frame. As he was inspecting the alignment, his hands were off the controls, but he detected the man lift moving. It is believed by Mr. Gukutu that Mr. Guillory was moving the basket. *Deposition of Gukutu at 60 line 25 to 62 at line 15.* The movement of the basket resulted in the frame pinning Mr. Guillory between it and the man lift controls.

14. As a result, Mr. Guillory died from his injury. *Plaintiff's Third Amended Complaint at Count I paragraph 5.*

15. Subsequent to the incident, Senesco filed forms with the state workman's compensation commission and for longshore and harbor worker's compensation. *See Memorandum of Agreement for the State of Rhode Island Worker's Compensation.* The plaintiff received compensation under the state workman's compensation act. *Deposition of Allison Marie Dunbar Guillory at page 35 line 11 to 36 at line 22; Plaintiff's Answer to Interrogatory No. 5.*

16. At the time of the incident, Reason Gukutu was performing the work of Senesco, all of the work assignments were received from a Senesco employee, there was an understanding between Cristian and Senesco that Reason Gukutu would be performing the work of Senesco, Reason Gukutu acquiesced in the work situation, the tools and place for performance were furnished by Senesco, *deposition of Millette at 107 line 4-9; Deposition of Christian at 44 at line 14 to 45 at line 22;* and Mr. Gukutu had been working at Senesco under that arrangement for a considerable length of time.

17. Senesco is located on water on McNaught Street

in Quonset Point. *Deposition of Scannell at pages 66 line 12 to 70 at line 2 and Exhibit D to the deposition.*

Respectfully submitted,
By its attorney,
**CLINTON & MUZYKA, P.C.**

**“/S/Robert E. Collins”**

**Robert E. Collins**
**BBO NO: 2951**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165
(617) 720-3489 Fax

Dated: March 22, 2007