UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALLISON MARIE DUNBAR GUILLORY, Administratrix of the Estate of Patrick Guillory, and as Parent and Next Friend of WINTER LAPATRIA GUILLORY and ARIEL JU'NEA KEON GUILLORY

vs.

REASON GUKUTU and CHRISTIAN PERSONNEL, INC. d/b/a CHRISTIAN CONSTRUCTION INC.

RECEIVED
SEP 29 2006
CLINTON & MUZYKA, P.C.

C. A. NO.: 06-171-S

**PLAINTIFF'S ANSWERS TO INTERROGATORIES PROPOUNDED BY DEFENDANT CHRISTIAN PERSONNEL, INC. d/b/a CHRISTIAN CONSTRUCTION, INC.**

Plaintiff hereby answers interrogatories propounded by defendant Christian Personnel, Inc. d/b/a Christian Construction, Inc. dated May 22, 2006 as follows:

**INTERROGATORY NO. 1:** With respect to the decedent, state:

a. Full name.
b. Date and place of birth (specifying city, state and county).
c. Last residence.
d. Relationship to the plaintiff.

**ANSWER:**

a. Patrick James Guillory;

b. August 28, 1959, Orleans Parish, LA;

c. 947 West Jordan, Opelousas, LA 70570;

d. Patrick and I were married from 1995 until July 3, 2002 and had two daughters, Winter (age 11) and Ariel (age 12).

**INTERROGATORY NO. 2:** With respect to the decedent, state:

a. When did decedent first arrive in the United States.
b. When did decedent first reside continuously in the United States.
c. When and were decedent became a citizen of the United States.
d. Has decedent ever been convicted of a crime.

**ANSWER:**

a. Born in U.S. on August 28, 1959;

b. All of his life;

c. Born a citizen;

d. Not aware of any convictions.

**INTERROGATORY NO. 3:** State the name and address of each employer for whom decedent worked for the ten years immediately preceding June 15, 2005, and specify with regard to each such employer:

a. The date on which decedent's employment commenced and terminated.
b. The position – title, job description and/or rank which decedent held during each such period of employment.
c. The amount of income derived from each period of employment.
d. The reason of termination of employment in each instance and whether it was the decedent's request or at the employer's request.

**ANSWER:**

a. Senesco Marine was Patrick's employer at time of his death;

b. Patrick worked offshore as a welder and roustabout during our marriage and worked for a number of companies. He had worked for American Commercial Bargeline and Brown and Root. He had also done a lot of construction work called "turn arounds" for various companies;

c. I divorced my husband several years prior to his death and I am not aware of specific details of his employment after our divorce;

d. Same as "c" above.

**<u>INTERROGATORY NO. 4</u>:** Set forth the gross income of the decedent for each of the five years preceding his death, stating in each case, the source of the said income.

**<u>ANSWER</u>:** I do not know what Patrick was earning during this period because we were divorced. However, the attached Memorandum of Agreement indicates that he was earning an average weekly wage (with overtime) of $523.13 at Senesco at the time he died.

**<u>INTERROGATORY NO. 5</u>:** Has any claim for State Workman's Compensation benefits and/or Longshore and Harborworker's Compensation been filed for the death of the decedent and/or survivor benefits? If yes, please indicate the type of benefit sought, place of filing, case number and any resolution of the claim.

**<u>ANSWER</u>:** Yes. Worker's Compensation benefits. Under a Memorandum of Agreement the base compensation rate is $332.65, with an additional $80.00 for the two children. (See attached Memorandum of Agreement.)

The children also receive Social Security death benefits in the amount of $571.00 per month.

**<u>INTERROGATORY NO. 6</u>:** Has any statement of estate assets been filed by the plaintiff or anyone acting on behalf of the plaintiff? If so, state where said statement was filed, by whom and the case number.

**<u>ANSWER</u>:** Yes. I have filed estate proceedings in the State of Louisiana, St. Landry Parish, 27th JDC, 05-P-3462-C.

**<u>INTERROGATORY NO. 7</u>:** List the items of personal property having a value in excess of $200.00 which decedent owned at the time of his death, and the estimated value of each.

**<u>ANSWER</u>:** I divorced my husband several years prior to his death and I am not aware of details regarding his personal belongings. I do know he owned his house at 947 West Jordan, Opelousas, LA, which recently sold for $26,000.00, and I believe he may

have had a small bank account with a balance of approximately $1,700.00 at Chase Bank in Opelousas, LA.

**INTERROGATORY NO. 8:** State what bank accounts, jointly or individually, decedent maintained at the date of his death, the names and addresses of each bank, the amounts in each account at the date of his death, and the highest and lowest balance in each account during the period of one year preceding his death.

**ANSWER:** I divorced Patrick several years prior to his death so I am not aware of specific details of his bank accounts. However, I believe he may have had a small bank account with a balance of approximately $1,700.00 at Chase Bank in Opelousas, LA, at the time he died.

**INTERROGATORY NO. 9:** State the amount decedent spent annually on his clothing, transportation, food, lodging, amusement, and other personal or business expenses for the five years preceding his death. Tabulate the items with the best estimates, if the exact amounts are not known.

**ANSWER:** I divorced Patrick several years prior to his death and I am not aware of details of his personal expenses.

**INTERROGATORY NO. 10:** State decedent's last permanent home address and each other permanent home address at which he resided for ten years prior to June 15, 2005.

**ANSWER:**

947 West Jordan, Opelousas, LA 70570;

1129 Story Street in Opelousas, LA 70570;

Market Street in Opelousas, LA 70570;

Audrey Street in Opelousas, LA 70570;

Ann Street in Opelousas, LA 70570;

South Street in Opelousas, LA 70570;

Railroad Avenue in Opelousas, LA 70570.

**INTERROGATORY NO. 11:** Did decedent have any children? If so, state their names and when each was born.

**ANSWER:**

Latravia Barnes, age 26, born in January 1980, (child of Janice Barnes, decedent's first wife);

Ariel Keon Ju'nea Guillory, born on October 30, 1993; 12 yrs old.

Winter Lapatria Guillory, born on February 9, 1995. 10 yrs. old.

**INTERROGATORY NO. 12:** Set forth the names and present addresses, the dates and places of birth, and the relationships of all persons to whom it is claimed decedent gave support and/or contributions.

**ANSWER:** Patrick was required to pay me $300.00 per month and Ariel $280.00 per month under the terms of the divorce agreement.

He did not make the alimony payments, and made one child support payment for Ariel. However, he was very close to his children and would see them regularly and buy gifts for the girls for birthdays, Christmas and family occasions.

**INTERROGATORY NO. 13:** Please state the name and current business of each and every expert witness that the Defendant expect to call as a witness at the trial of this claim and as to each such expert, please state in as much detail as possible:

a. The educational and professional background of each or provide a curriculum vitae.
b. The subject matter on which such expert is expected to testify at the time of trial,
c. All facts and opinions to which each such expert will testify,
d. The grounds for each opinion to which each such witness will testify, and
e. Every fact upon which each such witness will rely on for each opinion.

**ANSWER:** At this time, Plaintiff has not retained expert witnesses to testify at trial in this matter. This response will be supplemented in accordance with the Rules of Civil Procedure and the Court's Scheduling Order in this matter.

**INTERROGATORY NO. 14:** Set forth the gross income of each next of kin or other persons allegedly dependent upon decedent's support for each of the five years preceding his death, stating in each case the source of the said income.

**ANSWER:** On advice of counsel, I object to this interrogatory in that it seeks information that is irrelevant to the determination of damages resulting from the death of Patrick Guillory under the Rhode Island Wrongful Death Act.

Without waiving this objection, I worked during the five years prior to Patrick's death and supported the children and myself. We were not dependent on Patrick for support during this period.

**INTERROGATORY NO. 15:** Does plaintiff claim that she was receiving maintenance and support from the decedent at the time of the decedent's death? If so, state separately:

a. The amount of maintenance and support received from decedent in each of the five years prior to decedent's death.
b. The form in which such amounts were received (check, money order, currency, etc.).

**ANSWER:** On advice of counsel, I object to this interrogatory in that it seeks information that is irrelevant to the determination of damages resulting from the death of Patrick Guillory under the Rhode Island Wrongful Death Act.

Without waiving this objection, Patrick was under court order of support to pay alimony in the amount of $300.00 and $280.00 per month in child support for Ariel. He did not make the alimony payments and was behind in his child support payments. Patrick's house that he owned when he died has recently been sold and the back alimony payments will be paid from the proceeds of that sale.

**INTERROGATORY NO. 16:** Does any person other than the plaintiff claim to have been regularly receiving maintenance and support from decedent at the time of decedent's death? If so, state separately:

a. The amount of maintenance and support persons received from decedent in each of the five years prior to decedent's death.

b. The form in which such amounts were received (check, money order, currency, etc.)

c. The name and address of each person other than plaintiff who received said moneys, and the amounts each received.

**ANSWER:** On advice of counsel, I object to this interrogatory in that it seeks information that is irrelevant to the determination of damages resulting from the death of Patrick Guillory under the Rhode Island Wrongful Death Act.

Without waiving this objection, I am not aware of anyone else claiming support from the decedent except as indicated above.

**INTERROGATORY NO. 17:** State separately the amount of money received from decedent by any alleged dependent which was spent in each of the five years prior to decedent's death for:

a. Mortgage payments, expenses of upkeep and/or rental of a house occupied by decedent, and the address thereof.

b. Food.

c. Clothing.

**ANSWER:** On advice of counsel, I object to this interrogatory in that it seeks information that is irrelevant to the determination of damages resulting from the death of Patrick Guillory under the Rhode Island Wrongful Death Act.

Without waiving this objection, my two children and I lived at Patrick's house at 947 West Jordan in Opelousas, LA, until the divorce on July 3, 2002.

After the divorce, I moved into an apartment with my two children. I paid the rent for the apartment and for food and clothing.

**INTERROGATORY NO. 18:** State separately what amounts of money, if any, received by an alleged dependent from decedent were saved in each of the five years prior to decedent's death, where such savings were kept, and the purpose for which the money was saved.

**ANSWER:** On advice of counsel, I object to this interrogatory in that it seeks information that is irrelevant to the determination of damages resulting from the death of Patrick Guillory under the Rhode Island Wrongful Death Act.

Without waiving this objection, none.

**INTERROGATORY NO. 19:** State separately how much of the money received by each alleged dependent was spent for his or her food, clothing, shelter, and schooling in each of the five years prior to decedent's death.

**ANSWER:** On advice of counsel, I object to this interrogatory in that it seeks information that is irrelevant to the determination of damages resulting from the death of Patrick Guillory under the Rhode Island Wrongful Death Act.

Without waiving this objection, any money received from Patrick was used for these expenses.

**INTERROGATORY NO. 20:** At the time decedent began employment with the employers, identified in response to Interrogatory Number 3 was decedent suffering from any medical condition or physical disability whatsoever? If so, state specifically:

a. The exact nature of each such condition or disability and by whom employed at such time.
b. The specific part of the body involved.
c. For how long decedent suffered from such condition or disability.
d. When, by whom, and in what manner decedent received any treatment whatsoever for any such condition or disability.
e. Whether decedent made known the fact of such disability or condition to his employers prior to commencing work.

**ANSWER:** During the period of our marriage, Patrick was in excellent health and did not suffer from any medical condition or physical disability. While I did not live with him after the divorce, I would see him on a regular basis with the children, and I do believe he continued to have good health up until the time of his death.

**INTERROGATORY NO. 21:** At any time after the death of decedent was an autopsy or medical examination made of his body? If the answer to the foregoing is in the affirmative, please state:

a. Where each autopsy or medical examination was performed of the decedent's body.
b. When each autopsy or medical examination was performed of the decedent's body.
c. By whom was each autopsy or medical examination performed of the decedent's body.

**ANSWER:** Yes. It was done in Rhode Island. Defendants have a copy of the autopsy report.

**INTERROGATORY NO. 22:** Itemize the burial expenses and other expenses in connection with the funeral and burial of the decedent and state which, if any, will be claimed as items of damages in this litigation.

a. If you claim that defendants were negligent, please indicate all actions and/or failure to act for which your claim of negligence is based.

**ANSWER:** Latravia Barnes took care of burial expenses. I am not aware of the amount at this time but will try to get this information to supplement this response.

While I have no first-hand knowledge of the accident, I understand that Patrick was crushed in a man lift that was negligently operated by the Defendant, Reason Gukutu.

**INTERROGATORY NO. 23:** Please state, in full detail, how the incident on June 15, 2005 which resulted in the death of decedent occurred.

**ANSWER:** I have no personal knowledge of how the accident took place.

**INTERROGATORY NO. 24:** During the year preceding his death, state as accurately as possible, the monies expended by decedent for his self-maintenance and pleasure as follows:

a. Housing;
b. Food;
c. Drink;
d. Tobacco;
e. Clothing and laundering;
f. Transportation;
g. Entertainment;
h. Taxes, licenses and dues;

i. Education and reading;
j. Medical and dental
k. Cosmetics and sundries.

**ANSWER:** I divorced Patrick several years prior to his death and I am not aware of the details of his personal expenses.

Allison Marie Dunbar Guillory
ALLISON MARIE DUNBAR GUILLORY,
Administratrix of the Estate of Patrick Guillory, and as Parent and Next Friend of WINTER LAPATRIA GUILLORY and ARIEL JU'NEA KEON GUILLORY

Subscribed and sworn to before me at Opelousas, Louisiana, this 20 day of September, 2006.

NOTARY PUBLIC
My Commission Expires: Lifetime
George S. Bourgeois, JR.
#16821

Signed pursuant to Fed R. Civ. P. 26(g):

Vincent T. Cannon Bar #2324
Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641
vtc@decof.com

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within document was sent by regular mail, postage prepaid from Decof & Decof, P.C., One Smith Hill, Providence, RI 02903 to **Robert E. Collins, Esq.,** Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, MA 02108 on the 28th day of September, 2006.

Guillory P001