**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ALLISON MARIE DUNBAR GUILLORY,<br>Administratrix of the Estate of Patrick Guillory,<br>and as Parent and Next Friend of WINTER<br>LAPATRIA GUILLORY and ARIEL JU'NEA<br>KEON GUILLORY | : | |
| vs. | : | C. A. NO.: 06-171-S |
| REASON GUKUTU and<br>CHRISTIAN PERSONNEL, INC.<br>d/b/a CHRISTIAN CONSTRUCTION INC. | : | |

**PLAINTIFF, ALLISON MARIE DUNBAR GUILLORY'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Allison Marie Dunbar Guillory, and submits her Memorandum in Support of her Objection to Defendant's Motion for Summary Judgment.

## 1. INTRODUCTION

This is a Wrongful Death action brought by Plaintiff Allison Marie Dunbar Guillory, Administratrix of the Estate of decedent, Patrick Guillory, on behalf of his Estate and their two minor children, Winter (age 7) and Ariel (age 12). The Plaintiff is the divorced spouse of the decedent. The Plaintiff and the minor children all currently reside in Louisiana.

To summarize the factual background of this case, plaintiff's decedent, Patrick Guillory, died in an accident on June 15, 2005 at the shipbuilding facilities of Senesco

Marine in North Kingstown, Rhode Island. The accident occurred when Guillory and defendant Reason Gukutu were jointly operating the controls of a man lift. Guillory became pinched between the lift and a steel gusset (beam) inside a barge, pinning him and causing him to suffer fatal internal injuries. The impact with the gusset caused Guillory to become draped over the man lift control panel, preventing Gukutu's access to the emergency deactivation switch to stop the movement of the man lift. Another worker at the shipyard responded to the accident and shut off the power to the man lift on the ground.

Guillory was not certified and trained to operate the man lift. Gukutu was a certified operator and should not have allowed Guillory to operate any of the controls. Senesco conducted an investigation of the accident and determined that the accident was the result of Gukutu's misconduct. OSHA also conducted an investigation and cited and fined Senesco because an authorized operator was not in control of the aerial lift at all times.

Plaintiff filed a claim after Guillory's death under the Rhode Island Workers Compensation Act. His minor children, Winter and Ariel, are currently receiving Workers Compensation benefits.

Defendants have brought this motion for summary judgment on the basis that Defendant Gukutu was a borrowed servant of Senesco. If he was a borrowed servant of Senesco, he would be considered a fellow employee of Guillory at Senesco and immune from liability under the Rhode Island Worker Compensation Act. Likewise, Defendant Christian Construction, Inc. ("CCI") would be immune from any derivative claims under *respondeat superior* based upon its employer-employee relationship with Gukutu.

Additionally, defendants contend that the Longshore and Harbor Worker's Compensation Act ("LHWCA") bars any claims against CCI for its direct negligence in hiring and training Gukutu because of the exclusive remedy provisions of the LHWCA.

It is plaintiff's position, as discussed below, that there are genuine issues of fact regarding whether or not defendant Gukutu was a borrowed servant of Senesco Marine. These factual issues must be resolved by a jury, and preclude summary judgment based upon the record in this case. Furthermore, assuming *arguendo* that summary judgment is appropriate and should be granted on the question of Gukutu's status as a borrowed servant of Senesco Marine, plaintiff's claims against CCI for its direct negligence in hiring and training Gukutu are not barred by the LHWCA and require resolution by jury trial.

## II. STANDARD OF REVIEW

A party moving for summary judgment must show "that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). A court ruling on a motion for summary judgment must avoid making factual findings or credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255, 106 S.Ct. 2502, 91 L.Ed. 2d 202 (1986) ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." In determining whether a factual dispute exists the court must view the record and summary judgment submissions in the light most favorable to the nonmoving party. See 11 *Moore's Fed. Prac.* 56.11[5][a] at 107.

As discussed below, because there are genuine issues of material fact regarding whether or not defendant Gukutu was a "borrowed servant" of Senesco Marine this motion should be denied.

## III. THERE ARE GENUINE ISSUES OF FACT UNDER BOTH RHODE ISLAND LAW AND THE LONGSHORE AND HARBOR WORKER'S COMPENSATION ACT WHETHER OR NOT REASON GUKUTU WAS A "BORROWED SERVANT" OF SENESCO MARINE

### a. Rhode Island Law

In *Mainella v. Staff Builders Industrial Services, Inc.*, 608 A.2d. 1141 (R.I. 1992), the Rhode Island Supreme Court discussed the requirements and the effects of the borrowed-servant rule on the liability of an employer who hires a temporary worker from an employment agency. In *Mainella*, the defendant Staff Builders placed an individual named Frederick Dunlavey (Dunlavey) as a temporary employee in the maintenance department at J.T. Healy & Son Corporation (Healy). Robert Mainella, an employee of J.T. Healy, fell and was injured on Healy's premises and brought suit against Staff Builders.

Mainella sued Staff Builders on two grounds. First, Mainella claimed that Dunlavey was an employee of Staff Builders and that Staff Builders was responsible for the negligence of its employee. Secondly, Mainella claimed that Staff Builders was negligent in supervising and hiring an unfit employee. The trial justice dismissed the first claim, finding that Healy was a borrowed servant and as such Staff Builders was not responsible for his negligent conduct as a matter of law. The trial justice allowed the plaintiff to amend his complaint and bring a claim against Staff Builders for its negligence

in hiring, training and supervising Dunlavey that would not be barred by the status of Dunlavey as a borrowed servant of J.T. Healy.

The *Mainella* Court sustained the trial justice, stating that the borrowed-rule "severs the liability of an employer when the servant is lent to another employer or master." Id. at 1144. The Court went on to state as follows:

> "This second master, who exercises *complete* control over the servant, is liable for injuries to a person or property of third persons resulting from the acts of his or her employee, which are incidental to actions that an employer is hired to perform and are within the scope of employment. *Agostini v. W.J. Halloran Co.*, 82, R.I. 466, 111 A.2d 537 (1955). As long as the borrowing employer retains *full* control over the lent employee, the borrowing employer assumes liability for the employee's conduct, even though the original lending employer pays the employee's salary. *Burton v. Diamond Sand and Stone Co.*, 327 So.2d 95 (Fla. App. 1976)" Id. at 1144. (emphasis supplied)

The Rhode Island Supreme Court has not defined what is met by "complete" or "total" control over an employee in order to trigger the borrowed-servant rule. However the *Burton* decision cited by the Rhode Island Supreme Court in Mainella stated the rule as follows: "[I]f that third party has complete control over the servant and directs his conduct at all time, he will be held responsible for the servant's derelictions even though the original employer is still paying his salary." *Burton*, supra at 95.

It is plaintiff's position that there are genuine issues of material fact whether Senesco Marine in this case had "complete" or "total" control over the actions of Reason Gukutu, and directed "his conduct at all time" so as to sever the liability of his employer, CCI, for the negligent conduct of its employee. The following facts would suggest that CCI continued to retain some control over the conduct of employee, such as Reason Gukutu that it placed at Senesco Marine:

1. CCI made arrangements for workers to live in Rhode Island, and for transportation to the Senesco job site.

2. CCI had the right to hire, fire, discipline and remove CCI employees at Senesco for conduct outside the shipyard.

3. CCI could reassign workers from Senesco to another shipyard without the permission of Senesco.

4. CCI could remove workers from Senesco without Senesco's permission, and has fired hundreds of workers at Senesco over the years.

5. CCI had an office for its coordinator on the grounds of Senesco at the time of this accident.

6. If Senesco wanted an employee suspended, it would on occasion contact CCI and suggest CCI suspend the worker.

7. CCI supplied respirator masks and hand tools for the CCI workers placed at Senesco.

8. CCI directly paid its employees who worked at Senesco.

These facts raise genuine issues as to whether or not Senesco had "complete" or "total" control over CCI employees, such as Reason Gukutu, and whether Senesco retained and shared control of these workers with Senesco. This is not a case like *Mainella*, where the temporary agency, Staff Builders, retained no control over the maintenance worker after he was placed with the temporary employer other than payment of wages. Here CCI continued to have significant control over the workers it placed at Senesco as discussed above. Because there are genuine issues of material fact

regarding whether or not Defendant Gukutu was a "borrowed servant" of Senesco Marine, Defendant's Motion for Summary Judgment should be denied.

**b. Longshore and Harbor Worker's Compensation Act**

The 1972 amendments to the Longshore and Harbor Worker's Compensation Act ("LHWCA") extended federal jurisdiction landward beyond the shoreline of the navigable water of the United States for claims of injured employees so that in cases such as the instant claim there is concurrent jurisdiction under the LWHCA and the Rhode Island Worker's Compensation Act. While plaintiff's minor children currently receive benefits under the Rhode Island Workers Compensation Act, plaintiff could have opted to file for benefits under the LHWCA. See *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715 (1980).

The First Circuit has not specifically addressed the criteria for determining whether an employee is a borrowed servant under the LWHCA. However, it has examined the borrowed servant doctrine in other contexts. In *Wilson v. Nooter Corp*., 475 F.2d 497, 500 (Ist Cir.), *cert. denied,* 414 U.S. 865, 94 S.Ct. 116, 38 L.Ed.2d. 85 (1973), the court described the borrowed servant doctrine as "extraordinarily troublesome." The *Wilson* Court held that under New Hampshire law the fundamental test is right of control, and concluded that the question of right of control was a question of fact for the jury.

In *Kassel v. Gannett Co., Inc.,* 875 F.2d 935 (1989), the First Circuit discussed the borrowed servant issue in the context of a libel claim. The plaintiff, a clinical psychologist, alleged that an article appearing in *USA Today* written by a moonlighting reporter had libeled him. Defendant Gannett claimed that the reporter was an

independent contractor and that the newspaper could not be held liable for his conduct. The Court, in addressing this argument, stated that the existence of an employer-employee relationship depended on the facts of each case, and that the "factfinder must assess the totality of the circumstances, with no single factor necessarily attaining talismanic importance. "[G]iven a minimally sufficient evidentiary predicate, determining the nature of the relationship between the hirer and the hiree is precisely the sort of 'mixed' fact-law question which falls peculiarly within the competence of the jury *qua* factfinder." *Id.* (citations omitted)

The Defendants have cited a number of Fifth Circuit opinions that have looked at nine factors to determine if an employee is a borrowed servant. In *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312-13 (5th Cir. 1969), the court identified the following factors to be considered:

1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
2. Whose work is being performed?
3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4. Did the employee acquiesce in the new work situation?
5. Did the original employer terminate his relationship with the employee?
6. Who furnished tools and place for performance?
7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
9. Who had the obligation to pay the employee?

A number of these factors, when applied to the facts of this case, raise genuine issues of facts regarding the status of Reason Gukutu as a borrowed employee or Senesco Marine. For example, CCI retained some control over Gukutu by virtue of its power to remove him from the shipyard and reassign him to another shipyard without Senesco's permission. (Factor 1) Gukutu did not terminate his relationship with CCI: a full time coordinator was stationed in Rhode Island, and at Senesco in 2005, to transport the workers to Senesco and make sure they reported to work. (Factor 5) CCI furnished respirator masks and hand tools to its employees working at Senesco. (Factor 6) CCI had the right to fire Gukutu for conduct outside the shipyard. (Factor 8) CCI was obligated to pay Gukutu. (Factor 9)

A number of courts, after applying these factors discussed in *Ruiz* have identified similar issues of fact and denied summary judgment, leaving the questions of fact to the jury. For example, in *Robinson v. Apache Corp.*, 2006 WL 622917 (E.D. La. 2006), the court found that all of the factors, except for the first, third and fifth factors, favored borrowed servant status. However, these factors raised genuine issues of fact, "despite the apparent strength of defendant's position," that made summary judgment not appropriate. See *Brown v. Union Oil Corp of California*, 984 F.2d 674, 676 (5th Cir. 1993) (factual disputes on borrowed employee status determined at non-jury trial); *Milacron v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n. 13 (5th Cir.) (factual issue concerning factor 3).

Although no single factor, or combination of factors is determinative, the courts analyzing the borrowed servant status of an employee have emphasized the right to control as a central factor. *Brown*, supra. As discussed above, there are genuine fact

issues regarding CCI's control over Gukutu, which preclude summary judgment in this matter.

## IV. PLAINTIFF'S CLAIMS OF NEGLIGENT HIRING AND TRAINING NOT PREEMPTED BY THE LHWCA.

In Count V of Plaintiff's Third Amended Complaint, Plaintiff has brought a direct claim against CCI for its negligence in selecting, hiring, and training defendant Gukutu and assigning him to work at Senesco. Although CCI recognizes that this claim could be brought under Rhode Island law, *Mainella v. Staff Builders Industrial Services,Inc. supra,* defendant claims that Rhode Island law conflicts with the LHWCA and that under the LHWCA this type of claim should be dismissed.

The case relied upon by CCI in its memorandum, *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935 (3rd Cir. 1990), does not support defendant's position. The *Peter* case dealt with a situation where there was a conflict between the Virgin Island Workers Compensation Act and the LHWCA. The Virgin Island Act abolished the borrowed servant doctrine in actions brought by an borrowed employee. As a result, the injured worker could bring a tort claim against a party who would otherwise be considered his employer under the borrowed servant doctrine. This conflicted with the LHWCA that recognizes the borrowed servant doctrine. The *Peter* Court recognized this conflict, and held that the LHWCA applied, that the injured worker was an employee of the defendant Hess Oil under the borrowed servant doctrine, and as such that he was limited to the compensation provided for injured employees under the LHWCA.

In this case, there is no conflict between the Rhode Island Workers Compensation Act and the LHWCA. Both schemes recognize the borrowed servant doctrine. Both

statutory schemes prevent an injured employee receiving compensation benefits from bringing a tort claim against his employer, but allow third party claims against a party, other than the employer, who negligently caused harm to the injured employee. R.I.G.L Sec. 28-33-1,28-35-58; LHWCA, 33 U.S.C. 905(a), 905(b)

Defendant CCI argument is inconsistent at best. One the one hand, it argues that it is not the employer of Gukutu: that under the borrowed servant doctrine Gukutu is an employee of Senesco relieving CCI from liability for Gukutu's conduct. On the other hand, CCI argues it is Gukutu's employer and entitled to the tort immunity provided to employers under the Rhode Island and LHWCA compensation schemes. CCI's argument in fact supports plaintiff's position that there are genuine issues of fact in this case with respect to Gukutu's employment status at the time of the fatal accident.

Finally, there is clearly a sufficient factual basis to support a claim for negligence by CCI in selecting, hiring and training defendant Gukutu. Under its contract with Senesco, CCI was required to provide skilled employees. Although CCI claims that it checked out Gukutu's qualifications before sending him to Senesco, there is no documentary evidence that CCI ever checked his background.

Michael Scannell, the manager of Safety at Senesco, testified at his deposition that they expected CCI placements to be experienced shipyard workers who were "the cream of the crop." Scannell said the CCI workers were treated differently, expected to know more and to do more complicated tasks. It is undisputed that Gukutu operated the forklift on the day of the accident in an unsafe manner and in violation of OSHA requirements.

**CONCLUSION**

In sum, when the record and summary judgment submissions are viewed in the light most favorable to plaintiff, there are genuine issues of fact that mandate that defendants' Motion for Summary Judgment be denied.

Plaintiff would respectfully request that this Honorable Court deny Defendants' Motion for Summary Judgment.

ALLISON MARIE DUNBAR GUILLORY,
Administratrix of the Estate of Patrick Guillory, and as Parent and Next Friend of Winter Lapatria Guillory and Ariel Ju'Nea Keon Guillory

By their Attorneys,

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641
vtc@decof.com

/S/Vincent T. Cannon
Vincent T. Cannon #2324

**CERTIFICATION**

I hereby certify that I served the within document by electronic filing to the following counsel of record: **Robert E. Collins, Esq.,** rcollins@clinmuzyka.com, on the 13th day of April, 2007.

/S/Vincent T. Cannon

Guillory P035