**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ALLISON MARIE DUNBAR GUILLORY,<br>Administratrix of the Estate of Patrick Guillory,<br>and as Parent and Next Friend of WINTER<br>LAPATRIA GUILLORY and ARIEL JU'NEA<br>KEON GUILLORY | : | |
| vs. | : | C. A. NO.: 06-171-S |
| REASON GUKUTU and<br>CHRISTIAN PERSONNEL, INC.<br>d/b/a CHRISTIAN CONSTRUCTION INC. | : | |

**PLAINTIFF, ALLISON MARIE DUNBAR GUILLORY'S**
**STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

Now comes the Plaintiff, Allison Marie Dunbar Guillory, and by and through her attorneys, submits her Statement of Additional Undisputed Facts pursuant to LR Civ 56(a) regarding the above matter.

1. On or about September 26, 2003, Defendant Christian Construction Inc. (hereinafter referred to as "CCI") entered into a contract with Senesco to provide skilled trades for Senesco. *See Contract dated September 3, 2003.*

2. Under the terms of the agreement, CCI provided workers with respirator masks and hand tools for their trade/skill who were placed at Senesco. *See Contract dated September 3, 2003; Deposition of Donald Jerome Christian at 43-44.*

3. CCI has provided workers to Senesco since 2003. The number of workers provided to Senesco has ranged from 20 to 70 at one time. *Deposition of Donald Jerome Christian at 12.*

4. On or about September 11, 2003, Reason Gukutu was hired by CCI, and was sent to work at Senesco. *Deposition of Reason Gukutu at 16.*

5. CCI workers placed at Senesco were considered to know more, be more experienced, and to be able to do more complicated tasks. They were treated differently than inexperienced workers. They were considered the "cream of the crop." *Deposition of Michael Scannell at 36.*

6. Gukutu was never interviewed in person by CCI before he was hired. All interviews were done by telephone. *See Deposition of Reason Gukutu at 16-23.*

7. Gukutu submitted a resume to CCI containing his past employment history. There is no documentation that any of his past employers were contacted for references. *Deposition of Jacques Millette at 27-29; Deposition of Donald Jerome Christian at 33-34.*

8. In order to place workers at Senesco, CCI made arrangements for workers to live in Rhode Island, and provided transportation for workers to the Senesco shipyard. *See Deposition of Jacques Millette at 37; Deposition of Donald Jerome Christian at 15.*

9. CCI had a full-time coordinator in Rhode Island who was responsible for making sure that the workers showed up for work at Senesco. *See Deposition of Jacques Millette at 37; Deposition of Donald Jerome Christian at 39.*

10. All CCI workers at Senesco were paid directly by CCI and not by Senesco. CCI was responsible for payment of the wages of CCI employees at Senesco without regard to whether CCI was paid by Senesco. *Deposition of Donald Jerome Christian at 61.*

11. CCI was responsible for payment of payroll taxes and collection of taxes from CCI employees working at Senesco. *Deposition of Donald Jerome Christian at 61.*

12. CCI had the right to hire, fire, discipline and remove CCI employees from Senesco for conduct outside the shipyard. *Deposition of Donald Jerome Christian at 62.*

13. CCI could remove CCI employees working at Senesco and reassign those workers to another shipyard without Senesco's permission. *Deposition of Donald Jerome Christian at 62.*

14. If Senesco wanted an employee suspended, it would contact CCI and request that CCI suspend the worker. *Deposition of Donald Jerome Christian at 65-66.*

15. On or about February 6, 2004, CCI and Senesco Marine negotiated a new Employee Leasing Agreement. *See Employee Leasing Agreement dated February 6, 2004.*

16. CCI did not sign the Agreement because Senesco would not agree to give CCI the excusive right to provide employees to Senesco but agreed to all of the other terms of the Agreement. *Deposition of Donald Jerome Christian at 59-62.*

17. Article 7 of the Agreement entitled "CONTROL OF EMPLOYEES: CCI" stated that CCI had the "right to hire, fire discipline and reassign employees." *See Employee Leasing Agreement dated February 6, 2004.*

18. CCI interpreted that language as right to discipline workers for conduct outside the Senesco yard. *Deposition of Donald Jerome Christian at 59-62.*

19. CCI has fired hundreds of employees working at Senesco over the years. *Deposition of Donald Jerome Christian at 75-77.*

20. CCI workers were paid by the CCI coordinator at Senesco. *Deposition of Donald Jerome Christian at 39.*

21. Senesco would contact the CCI coordinator if a worker did not show or a worker was injured. *Deposition of Michael Scannell, 72-81.*

22. On June 15, 2005, the date of the incident in this case, the CCI coordinator was Rhonda Grounds. She had an office on the grounds of Senesco. *Deposition of Reason Gukutu at 35.*

23. A few months before the accident, Senesco hired plaintiff's decedent Patrick Guillory. He was never an employee of CCI. He was a new worker with limited experience. *Deposition of Michael Scannell, 15-16.*

24. On June 15, 2005, Plaintiff Guillory and Defendant Gukutu were jointly operating the controls on a lift called a JLG platform lift at Senesco inside a ship when Guillory became pinched between a steel gusset and the man lift suffering crush injuries resulting in his death. *See Accident Fatality Report on June 15, 2005; Scannell Memorandum to Mary Hoye, OSHA dated 9/26/05.*

25. At the time of the accident, Guillory was not trained or certified by Senesco to operate the man lift. *Deposition of Michael Scannell, 15-16.*

26. At the time of the accident, Gukutu was trained and certified by Senesco to operate the man lift. *Deposition of Michael Scannell, 14-16.*

27. The standard rules for operating a man lift at the time of the accident required than only one worker operate the lift at all times. No sharing of controls is allowed. *See Accident Fatality Report on June 15, 2005; Scannell Memorandum to Mary Hoye, OSHA dated 9/26/05.*

28. At the time of the accident, the speed controls on the man lift were set on the "rabbit" instead of the "turtle" mode. The "rabbit" mode is a fast and out of control mode never used in confined space. Safety rules required that the "turtle" or slower

mode be used at the time of the accident. *See Accident Fatality Report on June 15, 2005; Scannell Memorandum to Mary Hoye, OSHA dated 9/26/05.*

29. The Occupational Safety and Health Administration investigated the accident and issued a Citation and Notice of Penalty against Senesco as a result of the accident. Senesco was cited because "one authorized operator was not in control of the lift at all times" exposing the workers to crushing hazards. *See OSHA Citation and Notification of Penalty, 9/01/05.*

30. Senesco paid a $5,000 fine and agreed to retrain workers certified to operate man lifts on basic safety issues. *Scannell Memorandum to Mary Hoye, OSHA dated 9/26/05.*

ALLISON MARIE DUNBAR GUILLORY,
Administratrix of the Estate of Patrick
Guillory, and as Parent and Next Friend of
Winter Lapatria Guillory
and Ariel Ju'Nea Keon Guillory

By their Attorneys,

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641
vtc@decof.com

/S/Vincent T. Cannon
Vincent T. Cannon #2324

**CERTIFICATION**

I hereby certify that I served the within document by electronic filing to the following counsel of record: **Robert E. Collins, Esq.,** rcollins@clinmuzyka.com, on the 13th day of April, 2007.

/S/Vincent T. Cannon

Guillory P036