**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CIVIL ACTION**
**NO. 06-171-S**

**ALLISON MARIE DUNBAR GUILLORY,**
**Administratrix of the Estate**
**of Patrick Guillory, and**
**as Parent and Next Friend of**
**WINTER LAPATRIA GUILLORY and**
**ARIEL JU'NEA KEON GUILLORY,**
**Plaintiff,**

**VS.**

**REASON GUKUTU and**
**CHRISTIAN PERSONNEL, INC.**
**d/b/a CHRISTIAN CONSTRUCTION, INC.,**
**Defendants.**

**DEFENDANTS, REASON GUKUTU AND CHRISTIAN PERSONNEL, INC. d/b/a CHRISTIAN CONSTRUCTION, INC.'S, REPLY MEMORANDUM**

Now come the defendants, Reason Gukutu and Christian Personnel, Inc. d/b/a Christian Construction, Inc., in the above-entitled action, by and through their undersigned attorneys, Clinton & Muzyka, P.C., and submit their Reply Memorandum.

## I. DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

Defendants initially note that Plaintiff has not disputed any of the Defendants' Statement of Undisputed Facts. Instead, Plaintiff has propounded additional facts. Thus, all of Defendants' facts as stated in their

Motion for Summary Judgment are undisputed, specifically Undisputed Fact 6 which address direction and control of the work of Reason Gukutu. Defendants respond to Plaintiff’s Statement of Additional Undisputed Facts as follows:

1. Defendants admit Additional Undisputed Fact 1.

2. Defendants admit that the Contract so provides. Defendants note that Donald Jerome Christian testified that Christian Construction (hereinafter “CCI”) only provided the mask and basic hand tools. See Christian deposition at page 43-44.

3. Defendants admit Additional Undisputed Fact 3.

4. Defendants admit that Reason Gukutu started working at Senesco on or about September 11, 2003.

5. Defendants admit Additional Undisputed Fact 5.

6. Defendants deny Additional Undisputed Fact 6. Mr. Christian testified in his deposition that he believed that he interviewed Reason Gukutu. Christian deposition at 30-32. Also, David Jacques Millette testified that he believed Reason Gukutu came to Mobile, Alabama for an interview before being sent to Senesco. Millette deposition at 29. Defendants note that this factual dispute is irrelevant to the decision on whether Plaintiff is a borrowed servant.

7. Defendants admit Additional Undisputed Fact 7. Defendants note that both Mr. Christian and Mr. Millette testified that a check of references was done. Christian deposition at 33; Millette deposition at 29.

8. Defendants admit Additional Undisputed Fact 8. Mr. Christian testified that the arrangement is for temporary housing and that CCI advances the cost of the temporary housing. If hired, the worker reimburses CCI for the temporary housing. Christian at 15. He also testified that there may be a charge for the transportation provided, although he was not sure if that was done in 2005. Christian at 16.

9. Defendants admit Additional Undisputed Fact 9.

10. Defendants admit Additional Undisputed Fact 10.

11. Defendants admit Additional Undisputed Fact 11.

12. Defendants admit Additional Undisputed Fact 12. Mr. Christian reiterated that “the customer knows that I have no control inside the shipyard.” Christian deposition at 62.

13. Defendants admit Additional Undisputed Fact 13. Mr. Christian reiterated that he would never do that. Christian deposition at 62.

14. Defendants admit Additional Undisputed Fact 14.

15. Defendants deny Additional Undisputed Fact 15. This agreement was never executed and is therefore irrelevant. Christian deposition at 59.

16. Defendants deny Additional Undisputed Fact 16.

17. Defendants deny Additional Undisputed Fact 17.

18. Defendants deny Additional Undisputed Fact 18.

19. Defendants deny Additional Undisputed Fact 19. Mr. Christian testified that he has fired "a lot" on the request of Senesco. Christian deposition at 76.

20. Defendants admit Additional Undisputed Fact 20 to the extent that this means that the checks themselves were passed out by the superintendent. There is no dispute that CCI paid the salary of the CCI workers based upon time as kept by Senesco.

21. Defendants admit Additional Undisputed Fact 21.

22. Defendants deny Additional Undisputed Fact 22. Rhonda Grounds had a desk and table. Gutkutu at 35.

23. Defendants admit Additional Undisputed Fact 23.

24. Defendants deny Additional Undisputed Fact 24.

25. Defendants deny Additional Undisputed Fact 25.

26. Defendants admit Additional Undisputed Fact 26.

27. Defendants deny Additional Undisputed Fact 27. Michael Scannell testified that when he inquired of the

various supervisors at Senesco, he was told that the procedure of dual control was allowed. Scannell at 45.

28. Defendants deny Additional Undisputed Fact 28.

29. Defendants deny Additional Undisputed Fact 29. The Citation does not so indicate.

30. Defendants admit Additional Undisputed Fact 30.

## II. ITEMS IN AGREEMENT

Before addressing the Plaintiff's argument, it is useful to note the items that are **not** disputed. Plaintiff does not dispute that Senesco had full direction and control over the work that was being performed by Reason Gukutu and Patrick Guillory. Plaintiff only raises aspects of control that were not related to the work being performed. Also, Plaintiff does not dispute that both Patrick Guillory and Reason Gukutu were longshoremen or harbor workers within the ambit of 33 U.S.C. §901 et seq. Also, Plaintiff does not dispute that if there is a conflict between the Longshore and Harbor workers Act and state law, then the Longshore and Harbor workers Act controls, basically agreeing with *Peter v. Hess Oil Virgin Islands Corp., 903 F.2nd 935 (3rd Cir. 1990).*

Lastly, Plaintiff has not put forth any facts upon which this Honorable Court could find that Defendants had

breached any duty to train Reason Gukutu or that CCI was negligent in hiring Reason Gukutu.

**III. ARGUMENT**

Plaintiff's basic argument is that there are issues of fact as to borrowed servant status and that this Honorable Court, therefore, must deny to Motion For Summary Judgment. Where there are issues of fact, denial would be proper. *Wilson v. Nooter Corporation, 475 F.2nd 497 (1st Cir. 1973).* Here, there are no issues of fact requiring denial. Plaintiff agrees with all Statement of Undisputed Facts by Defendants. They point to additional facts. However, all of the pertinent facts for the determination of borrowed servant status are agreed by the parties. The determination for this Honorable Court, plainly stated, is whether the additional facts of elements of control off the job site are sufficient to defeat borrowed servant status.

There are three basic theories of how courts determine borrowed servant status. *Hynes, Chaos And The Law Of Borrowed Servant: An Argument For Consistency, 14 J.L. & Com. 1 (1994).* These are the Spot Control Rule, the Dual Liability Rule, and the Transfer of Allegiance Rule. *Id at 7-28.* The Spot Control rule emanates from *Nepstad v. Lambert, 50 N.W.2nd 614 (Minn. 1951).* This is

the rule recognized by the First Circuit, *Wilson v. Nooter Corporation, Supra at 502 fn. 3.* This also appears to be consistent with the Rhode Island rule for borrowed servant. *Agostini v. W.J. Halloran Co., 82 R.I. 466, 111 A.2nd 537 (1955).*

*Nepstad* involved a crane rented with an operator. After noting the difficulty where there is evidence that both the general contractor and the rental company have some measure of control over the employee, the Court therein adopted the spot control approach because it provided a more reasoned approach of imposing liability on the employer who was in the best position to prevent the injury. *Nepstad at 620.* The spot control test focuses on which employer had control over the details of the work at the time of the incident causing the injury. *Nepstad at 621-622.*

The court in *Nepstad*, as the court in *Agostini,* cited to the Restatement of Agency §227 for support for its test. In 2006, Restatement 3rd Agency §7.03 was promulgated. That section had an extensive discussion in the Comment section about "Borrowed Servants". The reporters note:

> When work requires specialized skills or equipment or requires that an actor perform a task on less than a full-time basis, it is not unusual that the actor who

> performs the work is employed by a firm that contracts to provide the actor's services to another firm… When an actor negligently injures a third party while performing work for the firm that has contracted for the actor's services, the question is whether that firm (often termed the "special employer") or the initial employer (often termed the "general employer"), or both, should be subject to liability to the third party. Liability should be allocated to the employer in the better position to take measures to prevent the injury suffered by the third party. An employer is in that position if the employer has the right to control an employee's conduct.
>
> However, a significant number of cases allocate liability to a special employer on the basis of its right and ability to direct a borrowed employee's specific actions in its workplace. A justification for this approach is that a borrowed employee may retain only formal ties to a general employer, depending on the duration and nature of the borrowed employee's relationship with the special employer, which weakens the likelihood that the general employer retains any practical capacity to control the borrowed employee's conduct. This approach also reflects the possibility that a special employer may in fact be in the better position to exercise control in a manner that reduces the risk of injury to third parties. This possibility may be especially likely when the nature of a borrowed employee's work requires coordinated effort as part of a skilled team and close direction or supervision by the team's leader.

The facts are clear and admitted by Plaintiff that the direction and control of the work by Reason Gukutu was with Senesco. Plaintiff points to factors such as the right to fire for after-work infractions, the provision of transportation to and from the work site and provision of temporary housing, the presence of a coordinator with a

desk and table at Senesco, and the right to reassign and suspend when requested. None of these factors change the fact that the direction and control of the work of Reason Gukutu was by Senesco.

Plaintiff also briefly discusses the factors used by the Fifth Circuit to determine borrowed servant status. Plaintiff notes eight (8) factors that go to conduct outside the work situation. Even if these factors were on point, Plaintiff appears to indicate that all factors must be in favor of borrowed servant status. In fact, if the majority of factors lead to the conclusion that Plaintiff's decedent was a borrowed servant, that is sufficient. *Alleman v. Omni Energy Services Corp., 2007 WL 763213, 763219 (E.D. La. 2007) ("The weight of factors therefore favors a finding of borrowed servant status").*

Plaintiff cites to *Kassel v. Gannett Co., Inc., 875 F.2nd 935 (1989),* in support of her argument that there are issues of fact that require denial of the Motion for Summary Judgment. That case is inapposite because it involved the distinction between an employer and an independent contractor, not a borrowed servant. *Id at 942 fn. 5 ("In determining whether one acting for another is a servant or an independent contractor…")*

Lastly, Plaintiff argues that Defendants are taking inconsistent positions in its preemption argument. There is no such inconsistency. The argument is actually quite simple and consistent: if Plaintiff is a borrowed servant, then the position of *Mainella* that CCI can still be liable for its own negligence is inconsistent with the federal rule and is preempted. Even if *Mainella* were to apply, there are no facts upon which a jury could rely on to find that CCI was directly negligent in hiring or training Reason Gukutu.

There is absolutely no testimony that CCI had any duty to train Reason Gukutu. Mr. Christian testified that, if requested and paid for, CCI would provide training. That was not requested in this contract.

There is no testimony that Reason Gukutu was unqualified. Even Earl Barden, who was clearly adverse to Reason Gukutu, admitted that he was good at what he did. Plaintiff's only allegation is that there is no documentary support that references were checked. Both Mr. Christian and Mr. Millette testified that it was done, but the records were not retained. There is no evidence to the contrary.

**WHEREFORE**, the defendants pray this Honorable Court allow its Motion for Summary Judgment.

Respectfully submitted,

By its attorney,

**CLINTON & MUZYKA, P.C.**

**“/S/Robert E. Collins”**
**Robert E. Collins**
**BBO NO: 2951**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165
(617) 720-3489 Fax

Dated: April 30, 2007